**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **SUSAN THOMAS**, **MINDEA GAUSE**, **ALFRED MAIO**, **MICHELLE CARLISLE**, **KATHLEEN REGAN LUCIANI** and **STEVEN DOUGLASS**, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **CONNEX CREDIT UNION, INC.**, <br><br> Defendant. | Lead Case No. 3:25-cv-01292-SVN <br><br> JURY TRIAL DEMANDED |

## <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

Plaintiffs Susan Thomas, Mindea Gause, Alfred Maio, Michelle Carlisle, Kathleen Regan Luciani and Steven Douglass ("Plaintiffs"), by and through undersigned counsel, on behalf of themselves and all others similarly situated, allege the following Class Action Complaint (the "Action") against Defendant Connex Credit Union, Inc. ("CCU" or "Defendant") upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of counsel as follows:

### I.     SUMMARY

1.     Plaintiffs bring this Action on behalf of themselves and all other similarly situated victims as a result of a recent cyberattack and data breach involving their personally identifiable information suffered by Defendant (the "Data Breach").

2.     Between June 2 and 3, 2025, an unknown and unauthorized criminal actor gained access to Defendant's network and exfiltrated, at a minimum, names, account numbers, Social

**1**

Security numbers, and/or government ID ("PII").[1]

3.      In the notice letter, which Defendant mailed to Plaintiffs and Class Members on or around August 7, 2025 (the "Notice Letter"), Defendant states in relevant part:[2]

> **What Happened?** We experienced unusual activity in our cyber environment on June 3, 2025, and immediately started an investigation using independent experts to assist. We later learned that some of our files had been accessed or downloaded without authorization between June 2 and 3, 2025. We then worked to determine whose information was potentially involved in the incident and, on July 27, 2025, completed our review and learned that some of your personal information may have been involved in the incident.
>
> **What Information Was Involved?** The information may have included your name, account number, Social Security number, and/or government ID used to open your account. Please note we have no reason to believe this incident involved unauthorized access to member accounts or funds.
>
> **What We Are Doing.** As soon as Connex discovered the incident, we took the steps described above and implemented measures to enhance network security and minimize the risk of similar incident occurring in the future. We also notified the National Credit Union Administration and federal law enforcement and will provide whatever cooperation may be necessary to hold the perpetrators accountable.

4.      To be clear—there are numerous issues with CCU's Data Breach, but the deficiencies in the Data Breach Notice Letter exacerbate the circumstances for victims of the Data Breach: (1) CCU waited over *two* months to notice Plaintiffs and Class Members of the Data Breach; (2) CCU failed to state whether it was able to contain or end the cybersecurity threat, leaving victims to fear whether the PII that CCU continues to maintain is secure; and (3) CCU failed to state how the breach occurred. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude, due to the sensitivity and wide array of information compromised in this specific Breach.

---

[1] Notice Letter, attached hereto as **Exhibit A.**
[2] *Id.*

5. Furthermore, Defendant's delay in notifying Plaintiffs and Class Members of the Data Breach is in direct violation of Defendant's responsibilities under the data breach notification statute in Connecticut. *See* Conn. Gen. Stat. § 36a-701b, which requires that the disclosure notification be made "without unreasonable delay, but no later than 60 days after discovery of the breach." Defendant failed to meet this requirement.

6. As a result of the Data Breach, Plaintiffs and Class Members suffered injury and ascertainable losses in the form of the present and imminent threat of fraud and identity theft, loss of the benefit of their bargain, out-of-pocket expenses, loss of value of their time reasonably incurred to remedy or mitigate the effects of the attack, and the loss of, and diminution in, value of their personal information.

7. In addition, Plaintiffs' and Class Members' sensitive PII—which was entrusted to Defendant—was compromised and unlawfully accessed by an unauthorized third party due to the Data Breach. This information, while compromised and taken by unauthorized third parties, remains also in the possession of Defendant, and without additional safeguards, independent review, and oversight, remains vulnerable to future cyberattacks and theft.

8. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Plaintiff's and Class Members' PII.

9. Plaintiffs bring this class action lawsuit on behalf of themselves and those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that Defendant collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and other Class Members that their information had been subject to unauthorized access by an unknown third party.

3

10. Defendant maintained the PII in a reckless manner. In particular, the PII was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. The mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' PII was a known risk to Defendant and entities like it, and Defendant was thus on notice that failing to take steps necessary to secure the PII against those risks left that property in a dangerous condition and vulnerable to theft. Defendant was further on notice of the severe consequences that would result to Plaintiffs and Class Members from its failure to safeguard their PII.

11. Defendant disregarded the rights of Plaintiffs and Class Members (defined below) by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiffs' and Class Members' PII; failing to take standard and reasonably available steps to prevent the Data Breach; failing to properly train its staff and employees on proper security measures; and failing to provide Plaintiffs and Class Members prompt notice of the Data Breach.

12. In addition, Defendant and its employees failed to properly monitor the computer network and systems that housed the PII of Plaintiffs and Class Members. Had Defendant properly monitored its computer network and systems, it would have discovered the intrusion sooner, as opposed to letting cyberthieves roam freely in Defendant's IT network for months or even years.

13. Plaintiffs' and Class Members' identities are now at risk of being misused due to Defendant's negligent conduct because the PII that Defendant collected and maintained is now in the hands of data thieves. This present risk will continue for Plaintiffs' and Class Members' respective lifetimes.

14.     Armed with the PII accessed in the Data Breach, data thieves can commit a variety of crimes including without limitation, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

15.     As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a present and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

16.     Plaintiffs and Class Members will incur out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

17.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach.

18.     Plaintiffs seek remedies including, but not limited to, actual damages, compensatory damages, nominal damages, and reimbursement of out-of-pocket costs.

19.     Plaintiffs also seek injunctive and equitable relief to prevent future injury on behalf of themselves and the putative Class.

## II.     JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of Class Members is over 100, and at least one Class Member is a

citizen of a state that is diverse from Defendant's citizenship, including Plaintiff Carlisle.[3] Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

22.    This Court has personal jurisdiction over Defendant because its principal place of business is in Connecticut, and it does a significant amount of business in Connecticut.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant has its principal place of business located in this District, and a substantial part of the events giving rise to this action and/or omissions occurred in this District.

### III.    PARTIES

#### *Plaintiffs*

24.    Plaintiff Susan Thomas is an individual citizen of the State of Connecticut and received a letter from Defendant notifying her of the Data Breach. Plaintiff Thomas's data was exposed because she is a customer of CCU.

25.    Plaintiff Mindea Gause is an individual citizen of the State of Connecticut. Upon information and belief, Plaintiff Gause's data was exposed because she is a customer of CCU.

26.    Plaintiff Alfred Maio is an individual citizen of the State of Connecticut and received a letter from Defendant notifying him of the Data Breach. Plaintiff Maio's data was exposed because he is a customer of CCU.

27.    Plaintiff Michelle Carlisle is an individual citizen of the State of New Jersey and received a letter from Defendant notifying her of the Data Breach. Plaintiff Carlisle's data was exposed because she is a customer of CCU.

28.    Plaintiff Kathleen Regan Luciani is an individual citizen of the State of Connecticut

---

[3] According to the breach report submitted to the Massachusetts state government, 2,001 Massachusetts residents were impacted in the Data Breach at CCU. *See* https://www.mass.gov/doc/data-breach-report-2025/download.

and received a letter from Defendant notifying her of the Data Breach. Plaintiff Luciani's data was exposed because she is a customer of CCU.

29.    Plaintiff Steven Douglass is an individual citizen of the State of Connecticut and received a letter from Defendant notifying him of the Data Breach. Plaintiff Douglass's data was exposed because he is a customer of CCU.

### *Defendant Connex Credit Union, Inc.*

30.    Defendant Connex Credit Union, Inc. is a financial institution with its principal place of business located at 425 Washington Ave. North Haven, Connecticut 06473.

### IV.    FACTUAL ALLEGATIONS

### *Defendant's Business*

31.    According to Defendant's website:

> Connex is one of Connecticut's largest credit unions with over $1 billion in assets and serving more than 70,000 members across 8 branches.[4]

32.    Defendant collects personally identifiable information in the course of doing business. This personally identifiable information includes the PII that was compromised in the Data Breach alleged herein.

33.    Prior to opening accounts and receiving services from CCU, Plaintiffs and Class Members were required to and did in fact provide their PII to CCU.

34.    Upon information and belief, Defendant promises to maintain the confidentiality of Plaintiffs' and Class Members' PII to ensure compliance with federal and state laws and regulations, and not to use or disclose Plaintiffs' and Class Members' PII for non-essential purposes.

---

[4] https://www.connexcu.org/home/member-info-resources/corporate-info/about-connex (last accessed Jan. 2, 2026).

35.    As a condition of opening an account and receiving services, CCU requires that Plaintiffs and Class Members entrust it with highly sensitive personal information.

36.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from unauthorized disclosure.

37.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiffs and Class Members would not have entrusted Defendant with their PII had they known that Defendant would fail to implement industry—standard protections for that sensitive information.

38.    Plaintiffs and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### The Data Breach

39.    On August 7, 2025, Defendant informed Plaintiffs and the Class Members of the Data Breach via the Notice Letter, which states in relevant part:

> **What Happened?** We experienced unusual activity in our cyber environment on June 3, 2025, and immediately started an investigation using independent experts to assist. We later learned that some of our files had been accessed or downloaded without authorization between June 2 and 3, 2025. We then worked to determine whose information was potentially involved in the incident and, on July 27, 2025, completed our review and learned that some of your personal information may have been involved in the incident.
>
> **What Information Was Involved?** The information may have included your name, account number, Social Security number, and/or government ID used to open your account. Please note we have no reason to believe this incident involved unauthorized access to member accounts or funds.
>
> **What We Are Doing.** As soon as Connex discovered the incident, we took the steps described above and implemented measures to enhance network

**8**

security and minimize the risk of similar incident occurring in the future. We also notified the National Credit Union Administration and federal law enforcement and will provide whatever cooperation may be necessary to hold the perpetrators accountable.[5]

40.     The personally identifiable information that was compromised includes, but is not limited to, names, account numbers, Social Security numbers, and/or government ID.

41.     Due to Defendant's inadequate security measures, Plaintiffs and the Class Members now face a present, immediate, and ongoing risk of fraud and identity theft and must deal with that threat forever.

42.     Upon information and belief, the PII was not encrypted prior to the data breach.

43.     Upon information and belief, the cyberattack was targeted at Defendant as a company that collects and maintains valuable personal and financial data from its many customers, including Plaintiffs and Class Members.

44.     Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the PII of Plaintiffs and Class Members.

45.     Defendant had obligations to keep Plaintiffs' and Class Members' PII confidential and to protect it from unauthorized access and disclosure.

46.     Plaintiffs and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

47.     Upon information and belief, Defendant made promises to Plaintiffs and Class Members to maintain and protect their PII, demonstrating an understanding of the importance of

---

[5] Ex. A.

**9**

securing PII, including through its privacy policies.[6]

### *The Data Breach Was Foreseeable and the Defendant Was Aware of Its Risk*

48.    It is well known that PII, including names in particular, are invaluable commodities and a frequent target of hackers.

49.    In 2023, a record 3,205 data breaches occurred in the United States, resulting in about 349,221,481 sensitive records being exposed, a greater than 100% increase from 2019.[7]

50.    Individuals place a high value not only on their PII, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

51.    In light of recent high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), and, in light of the recent data breaches Wells Fargo has suffered, Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

52.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

53.    Despite the prevalence of public announcements of data breaches and data security

---

[6] *See* https://www.connexcu.org/home/fiFiles/static/documents/PrivacyPolicy.pdf ("To protect your personal information from unauthorized access and use, we use security measures that your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. Secure FTP site for all member data transfer: Password protected, the IP address for people accessing needs to be approved and the communication string in both directions is encrypted.") (last accessed Jan. 2, 2026).
[7] ITRC (Identity Theft Resource Center), *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last accessed August 13, 2025).

compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiffs and the proposed Class from being compromised.

### *Defendant Owed a Duty to Plaintiffs and Class Members to Secure their PII*

54. At all relevant times, Defendant owed a duty to Plaintiffs and Class Members to properly secure their PII, encrypt and maintain such information using industry-standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiffs and Class Members, and to promptly notify Plaintiffs and Class Members when Defendant became aware that their PII may have been compromised.

55. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiffs and the Class Members, on the other hand. The special relationship arose because Plaintiffs and the Members of the Class relied on Defendant to secure their PII when they entrusted Defendant with the information required to receive services from CCU.

56. Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiffs and Class Members.

57. Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

    a.    Maintaining a secure firewall configuration;

    b.    Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c.    Monitoring for suspicious or irregular traffic to servers;

d.      Monitoring for suspicious credentials used to access servers;

e.      Monitoring for suspicious or irregular activity by known users;

f.      Monitoring for suspicious or unknown users;

g.      Monitoring for suspicious or irregular server requests;

h.      Monitoring for server requests for PII;

i.      Monitoring for server requests from VPNs; and

j.      Monitoring for server requests from Tor exit nodes.

58.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[8] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[9]

59.     The ramifications of Defendant's failure to keep PII secure are long-lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims are likely to continue for years.

### *The Value of Personally Identifiable Information*

60.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200,

---

[8] 17 C.F.R. § 248.201 (2013).
[9] *Id.*

and bank details have a price range of $50 to $200.[10] According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[11]

61.    As a growing number of federal courts have begun to recognize the loss of value of PII as a viable damages theory, the sale of PII from data breaches, as in the Data Breach alleged herein, is particularly harmful to data breach victims—especially when it takes place on the dark web.

62.    The dark net is an unindexed layer of the internet that requires special software or authentication to access.[12] Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or 'surface' web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[13] This prevents dark web marketplaces from being easily identifiable to authorities or those not in the know.

63.    A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, personal and medical information like the PII at issue

---

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Jan. 2, 2026).
[11] Dark Web Price Index 2021, Zachary Ignoffo, March 8, 2021, available at: https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed Jan. 2, 2026).
[12] What Is the Dark Web?, Experian, available at https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last accessed Jan. 2, 2026).
[13] *Id.*

here.[14] The digital character of PII stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet, and the buyer and seller can retain their anonymity. The sale of a firearm or drugs, on the other hand, requires a physical delivery address. Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, Social Security numbers, dates of birth, and medical information.[15] As Microsoft warns "[t]he anonymity of the dark web lends itself well to those who would seek to do financial harm to others."[16]

64.     Plaintiffs' and Class Members' PII is a valuable commodity, a market exists for Plaintiffs' and Class Members' PII (which is why the Data Breach was perpetrated in the first place), and Plaintiffs' and Class Members' PII is likely being sold by hackers on the dark web (as that is the *modus operandi* of data thieves) – as a result, Plaintiffs and Class Members have lost the value of their PII, which is sufficient to plausibly allege injury arising from a data breach.

65.     An active and robust legitimate marketplace for PII also exists. In 2019, the data brokering industry was worth roughly $200 billion.[17] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[18] [19] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[20]

---

[14] *What is the Dark Web?* – Microsoft 365, *available at* https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web (last accessed Jan. 2, 2026).

[15] *Id*.; *What Is the Dark Web?,* Experian, *available at* https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last accessed Jan. 2, 2026).

[16] What is the Dark Web? – Microsoft 365, available at https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web (last accessed Jan. 2, 2026).

[17] https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last accessed Jan. 2, 2026).

[18] https://datacoup.com/ (last accessed Jan. 2, 2026).

[19] https://digi.me/ (last accessed Jan. 2, 2026).

[20]     Nielsen   Computer   &   Mobile   Panel,   Frequently   Asked   Questions,   available   at

66.     The PII stolen in this specific Data Breach was particularly harmful.

67.     PII can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[21]

68.     Given the nature of Defendant's Data Breach, as well as the unreasonable delay in notification to Class Members, it is foreseeable that the compromised PII has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiffs' and Class Members' PII can easily obtain Plaintiffs' and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

69.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures.

### *Plaintiffs' Experiences*

<u>*Plaintiff Susan Thomas's Experience*</u>

70.     Plaintiff Thomas was required to provide and did provide her PII to Defendant as a condition of opening an account and receiving services from CCU.

71.     To date, Defendant has done next to nothing to adequately protect Plaintiff Thomas and Class Members, or to compensate them for their injuries sustained in this Data Breach, particularly given the fact that Plaintiff Thomas's PII has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

72.     The fraud and identity monitoring services offered by Defendant places the burden

---

https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last accessed Jan. 2, 2026).

[21] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

squarely on Plaintiff Thomas and Class Members by requiring them to expend time signing up for the service.

73.     Nor has Defendant compensated Plaintiff Thomas and Class Members for the time they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online passwords, and other actions.

74.     Plaintiff Thomas and Class Members have been further damaged by the compromise of their PII in the Data Breach, which was "impacted" and is in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

75.     Plaintiff Thomas typically takes measures to protect her PII and is very careful about sharing her PII. Plaintiff Thomas has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

76.     Plaintiff Thomas stores any documents containing her PII in a safe and secure location, and she diligently chooses unique usernames and passwords for her online accounts.

77.     As a result of the Data Breach, Plaintiff Thomas has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff Thomas has spent significant time monitoring her accounts and credit score, changing her online account passwords and verifying the legitimacy of the Notice and researching the Data Breach. This is time that was lost and unproductive and took away from other activities and duties.

78.     Specifically, since the date of the Breach Plaintiff Thomas has spent significant time taking action to mitigate the harm she has suffered. Plaintiff Thomas (1) has spent, and continues to spend, considerable time and effort actively monitoring her accounts and credit; and

(2) she has lost sleep due to the stress and anxiety she now suffers from the fear of her PII being exposed, misused, and sold on the black market.

79.     Plaintiff Thomas also suffered actual injury in the form of damages to and diminution in the value of her PII — a form of intangible property that she entrusted to Defendant for the purpose of opening an account with CCU, which was compromised in and as a result of the Data Breach.

80.     Plaintiff Thomas suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

81.     Plaintiff Thomas suffered emotional distress and increased stress and anxiety as a result of the Data Breach because of the actions she has been forced to undertake, the loss of control over her most intimate information, and the fact that she must remain vigilant for the remainder of her life.

82.     Plaintiff Thomas has suffered imminent and impending injury arising from the increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

83.     Defendant obtained and continues to maintain Plaintiff Thomas's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff Thomas as a condition of opening an account and receiving services from CCU. Plaintiff Thomas, however, would not have entrusted her PII to Defendant had she known that it would fail to maintain adequate data security. Plaintiff Thomas's PII was compromised and disclosed as a result of the Data Breach.

84.     Since the Data Breach occurred, Plaintiff Thomas has experienced a suspicious charge conducted against her PayPal account, and suspicious login attempt alerts to her accounts.

**17**

Additionally, she received a notification from Google that her information may have been exposed and is available on the dark web.

85.    As a result of the Data Breach, Plaintiff Thomas anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Thomas is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

*Plaintiff Mindea Gause's Experience*

86.    Plaintiff Gause is a customer of Defendant and Defendant received Plaintiff Gause's PII through this relationship. Plaintiff Gause provided Defendant with her Social Security number, driver's license information, proof of residence information, and contact information.

87.    To date, Defendant has done next to nothing to adequately protect Plaintiff Gause and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly given the fact that Plaintiff Gause's PII has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

88.    Based on representations made by Defendant, Plaintiff Gause believed that Defendant had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Gause provided her PII to Defendant in exchange for receiving services from Defendant.

89.    At all relevant times, Defendant stored and maintained Plaintiff Gause's PII on its network systems, including the systems impacted in the Data Breach.

90.    Had Plaintiff Gause known that Defendant does not adequately protect the PII it collects and maintains, she would not have agreed to provide her PII to, or obtained services from, Defendant.

91.    Plaintiff Gause has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including time and effort spent reviewing her accounts for signs of fraudulent activity.

92.    Because of the Data Breach, there is no doubt Plaintiff Gause's highly confidential PII is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal PII they can exploit by selling on the dark web. As such, Plaintiff Gause and the Class are at an imminent risk of identity theft and fraud.

93.    In fact, since the Data Breach occurred, Plaintiff Gause received a notification from Experian informing her that her email address and phone number have been found on the dark web.

94.    Additionally, since the Data Breach occurred, Plaintiff Gause has experienced a significant uptick in spam calls, around four to five per day, that use her PII in attempts to scam Plaintiff Gause or to retrieve more PII from her.

95.    As a result of the Data Breach, Plaintiff Gause estimates she has already expended hours of her time and will need to do so on a weekly basis. As such, Plaintiff Gause has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that she is protected from identity theft, and/or reviewing account statements, credit reports, and/or other information.

96.    Plaintiff Gause places significant value on the security of her PII and does not readily disclose it. Plaintiff Gause has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

97.    Plaintiff Gause has been and will continue to be at a heightened and substantial risk

**19**

of future identity theft and its attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach. Indeed, Defendant acknowledged the present and increased risk of future harm Plaintiff Gause, and the Class now face by offering temporary, non-automatic credit monitoring services to Plaintiff Gause and the Class.

98. Knowing that thieves intentionally targeted and accessed her PII, including her Social Security number, has caused Plaintiff Gause great anxiety beyond mere worry.

99. Plaintiff Gause has a continuing interest in ensuring that her PII, which, upon information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff's and the Class's PII will be wholly unprotected and at-risk of future data breaches.

100. Plaintiff Gause has suffered injuries directly and proximately caused by the Data Breach, including: (i) theft of her valuable PII; (ii) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by her PII being placed in the hands of cybercriminals; (iii) damages to and diminution in value of her PII that was entrusted to Defendant with the understanding that Defendant would safeguard this information against disclosure; (iv) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data security—i.e., the difference in value between what Plaintiff Gause should have received from Defendant and Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect her PII; and (v) continued risk to her PII, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the PII that was entrusted to Defendant.

*Plaintiff Alfred Maio's Experience*

101.    Plaintiff Maio obtained a car loan from Defendant and is a customer of Defendant. As a condition of providing financial services to Plaintiff Maio, Defendant required Plaintiff Maio to provide it with his PII, including his name, Social Security number, address, email, phone number, and financial information.

102.    To date, Defendant has done next to nothing to adequately protect Plaintiff Maio and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly given the fact that Plaintiff Maio's PII has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

103.    Defendant has not compensated Plaintiff Maio and Class Members for the time they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online passwords and other actions.

104.    Based on representations made by Defendant, Plaintiff Maio believed that Defendant had implemented and maintained reasonable security and practices to protect his PII. With this belief in mind, Plaintiff Maio provided his PII to Defendant in exchange for receiving financial services from Defendant.

105.    At all relevant times, Defendant stored and maintained Plaintiff Maio's PII on its network systems, including the systems impacted in the Data Breach.

106.    Plaintiff Maio received a Notice Letter from Defendant notifying him that his PII was in the files accessed and acquired by an unauthorized third party in the Data Breach.

107.    Had Plaintiff Maio known that Defendant does not adequately protect the PII it collects and maintains, he would not have agreed to provide his PII to, or obtained financial services from, Defendant.

108.    Plaintiff Maio has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including time and effort spent reviewing his accounts for signs of fraudulent activity after receiving the Notice from Defendant.

109.    Additionally, Plaintiff Maio has experienced a significant increase in the number of spam calls, texts, and emails he receives since the Data Breach occurred. Further, after the Data Breach in mid to late November, 2025, Plaintiff Maio experienced four fraudulent charges conducted against his Key Bank account for amounts ranging from around $50 to $200. After speaking to his bank and getting the charges reversed, Plaintiff Maio closed his bank account and opened a new account to mitigate the harms resulting from the Data Breach. As a result, Plaintiff Maio needed to transfer his pension payments to his new account. As a result of the foregoing, Plaintiff Maio was forced to incur unreimbursed costs that include: 20 miles of gas for a trip to the bank to deal with the fraud and $100 for the purchase of ink in order to print papers to transfer his pension payments to his new account. Since the Data Breach occurred, Plaintiff Maio has also experienced various suspicious login attempts to his Microsoft and Facebook accounts. Because of the timing of the Data Breach and the suspicious activities he has experienced, Plaintiff Maio believes that the fraud he has experienced in recent months is a result of criminals obtaining and subsequently attempting to misuse his PII that was exposed in the Data Breach. Plaintiff Maio estimates he has spent approximately 5.5 hours total dealing with the fraud and transferring his pension payments.

110.    Plaintiff Maio has experienced fear, frustration, and stress because his PII was accessed and stolen by unauthorized third parties in the Data Breach, including because he must closely monitor his PII for signs of misuse and identity theft for the rest of his life.

111.    As a direct result of the Data Breach, Plaintiff Maio has suffered injury and

damages including, inter alia, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of his highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of his PII.

*Plaintiff Michelle Carlisle's Experience*

112. Plaintiff Carlisle was required to provide and did provide her PII to Defendant as a condition of opening an account and receiving services from CCU.

113. To date, Defendant has done next to nothing to adequately protect Plaintiff Carlisle and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly given the fact that Plaintiff Carlisle's PII has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

114. Based on representations made by Defendant, Plaintiff Carlisle believed that Defendant had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Carlisle provided her PII to Defendant in exchange for receiving financial services from Defendant.

115. At all relevant times, Defendant stored and maintained Plaintiff Carlisle's PII on its network systems, including the systems impacted in the Data Breach.

116. Plaintiff Carlisle received a Notice from Defendant notifying her that her PII was in the files accessed and acquired by an unauthorized third party in the Data Breach.

117. Had Plaintiff Carlisle known that Defendant does not adequately protect the PII it collects and maintains, she would not have agreed to provide her PII to, or obtained financial services from, Defendant.

118. The fraud and identity monitoring services offered by Defendant places the burden squarely on Plaintiff Carlisle and Class Members by requiring them to expend time signing up for

**23**

the service.

119.    Nor has Defendant compensated Plaintiff Carlisle and Class Members for the time they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online passwords and other actions.

120.    Plaintiff Carlisle and Class Members have been further damaged by the compromise of their PII in the Data Breach which was "impacted" and is in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

121.    Plaintiff Carlisle typically takes measures to protect her PII and is very careful about sharing her PII. Plaintiff Carlisle has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

122.    Plaintiff Carlisle stores any documents containing her PII in a safe and secure location, and she diligently chooses unique usernames and passwords for her online accounts.

123.    As a result of the Data Breach, Plaintiff Carlisle has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff Carlisle has spent significant time monitoring her accounts and credit score, changing her online account passwords and verifying the legitimacy of the Notice and researching the Data Breach. This is time that was lost and unproductive and took away from other activities and duties.

124.    Since the date of the Breach Plaintiff Carlisle has experienced significant stress and anxiety from the fear of her PII being exposed, misused and sold on the black market.

125.    Plaintiff Carlisle also suffered actual injury in the form of damages to and diminution in the value of her PII — a form of intangible property that she entrusted to Defendant

24

for the purpose of opening an account with CCU, which was compromised in and as a result of the Data Breach.

126.    Plaintiff Carlisle suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

127.    Plaintiff Carlisle suffered emotional distress and increased stress and anxiety as a result of the Data Breach because of the loss of control over her most intimate information and the fact that she must remain vigilant for the remainder of her life.

128.    Plaintiff Carlisle has suffered imminent and impending injury arising from the increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

129.    Defendant obtained and continues to maintain Plaintiff Carlisle's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff Carlisle as a condition of opening an account and receiving services from CCU. Plaintiff Carlisle, however, would not have entrusted her PII to Defendant had she known that it would fail to maintain adequate data security. Plaintiff Carlisle's PII was compromised and disclosed as a result of the Data Breach.

130.    As a result of the Data Breach, Plaintiff Carlisle anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Carlisle is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

*Plaintiff Kathleen Regan Luciani's Experience*

131.    Plaintiff Luciani was required to provide and did provide her PII to Defendant as a condition of opening an account and receiving services from CCU.

**25**

132.    To date, Defendant has done next to nothing to adequately protect Plaintiff Luciani and Class Members, or to compensate them for their injuries sustained in this Data Breach, particularly given the fact that Plaintiff Luciani's PII has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

133.    Based on representations made by Defendant, Plaintiff Luciani believed that Defendant had implemented and maintained reasonable security and practices to protect her PII. With this belief in mind, Plaintiff Luciani provided her PII to Defendant in exchange for receiving financial services from Defendant.

134.    At all relevant times, Defendant stored and maintained Plaintiff Luciani's PII on its network systems, including the systems impacted in the Data Breach.

135.    Plaintiff Luciani received a Notice from Defendant notifying her that her PII was in the files accessed and acquired by an unauthorized third party in the Data Breach.

136.    Had Plaintiff Luciani known that Defendant does not adequately protect the PII it collects and maintains, she would not have agreed to provide her PII to, or obtained financial services from, Defendant.

137.    Plaintiff Luciani has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including time and effort spent reviewing her accounts for signs of fraudulent activity after receiving the Notice from Defendant.

138.    The fraud and identity monitoring services offered by Defendant places the burden squarely on Plaintiff Luciani and Class Members by requiring them to expend time signing up for the service.

139.    Nor has Defendant compensated Plaintiff Luciani and Class Members for the time they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online

passwords, and other actions.

140.    Plaintiff Luciani and Class Members have been further damaged by the compromise of their PII in the Data Breach, which was "impacted" and is in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

141.    Plaintiff Luciani typically takes measures to protect her PII and is very careful about sharing her PII. Plaintiff Luciani has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

142.    Plaintiff Luciani stores any documents containing her PII in a safe and secure location, and she diligently chooses unique usernames and passwords for her online accounts.

143.    As a result of the Data Breach, Plaintiff Luciani has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff Luciani has spent significant time monitoring her accounts and credit score, changing her online account passwords and verifying the legitimacy of the Notice and researching the Data Breach. This is time that was lost and unproductive and took away from other activities and duties.

144.    Specifically, since the date of the Breach Plaintiff Luciani has spent significant time taking action to mitigate the harm she has suffered. Plaintiff Luciani (1) has spent, and continues to spend, considerable time and effort actively monitoring her accounts and credit; and (2) she has lost sleep due to the stress and anxiety she now suffers from the fear of her PII being exposed, misused, and sold on the black market.

145.    Plaintiff Luciani also suffered actual injury in the form of damages to and diminution in the value of her PII — a form of intangible property that she entrusted to Defendant

**27**

for the purpose of opening an account with CCU, which was compromised in and as a result of the Data Breach.

146. Plaintiff Luciani suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

147. Plaintiff Luciani suffered emotional distress and increased stress and anxiety as a result of the Data Breach because of the actions she has been forced to undertake, the loss of control over her most intimate information, and the fact that she must remain vigilant for the remainder of her life.

148. Plaintiff Luciani has suffered imminent and impending injury arising from the increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

149. Defendant obtained and continues to maintain Plaintiff Luciani's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff Luciani as a condition of opening an account and receiving services from CCU. Plaintiff Luciani, however, would not have entrusted her PII to Defendant had she known that it would fail to maintain adequate data security. Plaintiff Luciani's PII was compromised and disclosed as a result of the Data Breach.

150. Since the Data Breach occurred, Plaintiff Luciani has experienced fraudulent charges and unauthorized activity on her debit cards and bank accounts. This fraud has led to many overdraft charges on Plaintiff Luciani's bank account.

151. As a result of the Data Breach, Plaintiff Luciani anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Luciani is at a present risk and will continue to be

at increased risk of identity theft and fraud for years to come.

*Plaintiff Steven Douglass's Experience*

152.    Plaintiff Douglass was required to provide and did provide his PII to Defendant as a condition of receiving services from CCU.

153.    To date, Defendant has done next to nothing to adequately protect Plaintiff Douglass and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly given the fact that Plaintiff Douglass's PII has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

154.    Based on representations made by Defendant, Plaintiff Douglass believed that Defendant had implemented and maintained reasonable security and practices to protect his PII. With this belief in mind, Plaintiff Douglass provided his PII to Defendant in exchange for receiving financial services from Defendant.

155.    At all relevant times, Defendant stored and maintained Plaintiff Douglass's PII on its network systems, including the systems impacted in the Data Breach.

156.    Plaintiff Douglass received a Notice from Defendant notifying him that his PII was in the files accessed and acquired by an unauthorized third party in the Data Breach.

157.    Had Plaintiff Douglass known that Defendant does not adequately protect the PII it collects and maintains, he would not have agreed to provide his PII to, or obtained financial services from, Defendant.

158.    The fraud and identity monitoring services offered by Defendant places the burden squarely on Plaintiff Douglass and Class Members by requiring them to expend time signing up for the service.

159.    Nor has Defendant compensated Plaintiff Douglass and Class Members for the time

they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online passwords and other actions.

160.    Plaintiff Douglass and Class Members have been further damaged by the compromise of their PII in the Data Breach which was "impacted" and is in the hands of cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the PII.

161.    Plaintiff Douglass typically takes measures to protect his PII and is very careful about sharing his PII. Plaintiff Douglass has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

162.    Plaintiff Douglass stores any documents containing his PII in a safe and secure location, and he diligently chooses unique usernames and passwords for her online accounts.

163.    Plaintiff Douglass also suffered actual injury in the form of damages to and diminution in the value of his PII — a form of intangible property that he entrusted to Defendant for the purpose of opening an account with CCU, which was compromised in and as a result of the Data Breach.

164.    Additionally, since the Data Breach occurred, Plaintiff Douglass has experienced a significant uptick in spam calls, messages, and emails, around five to seven per day.

165.    Plaintiff Douglass suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

166.    Plaintiff Douglass suffered emotional distress and increased stress and anxiety as a result of the Data Breach because of the actions he has been forced to undertake, the loss of control over his most intimate information, and the fact that he must remain vigilant for the remainder of his life.

167.     Plaintiff Douglass has suffered imminent and impending injury arising from the increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

168.     Defendant obtained and continues to maintain Plaintiff Douglass's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff Douglass as a condition of receiving services from CCU. Plaintiff Douglass, however, would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. Plaintiff Douglass's PII was compromised and disclosed as a result of the Data Breach.

169.     As a result of the Data Breach, Plaintiff Douglass anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Douglass is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.     CLASS ACTION ALLEGATIONS

170.     Plaintiffs bring this suit on behalf of themselves and a class of similarly situated individuals under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of the following Class, which is preliminarily defined as:

> All persons whose PII was compromised in the Data Breach, including all who received a notice of the Data Breach (the "Class", and those individuals in the Class are the "Class Members").

171.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any

31

aspect of this litigation, as well as their immediate family members.

172.    **Numerosity.** The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, thousands of individuals have been affected by this breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

173.    **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

     i.   Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII;

     ii.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

     iii.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

     iv.   Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

     v.   Whether Defendant owed a duty to Class Members to safeguard their PII;

     vi.   Whether Defendant breached its duty to Class Members to safeguard their PII;

     vii.   Whether cybercriminals obtained Class Members' PII in the Data Breach;

viii.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

ix.  Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

x.  Whether Defendant's conduct was negligent; and;

xi.  Whether Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

174.  **Typicality.** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, was compromised in the Data Breach.

175.  **Adequacy of Representation.** Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

176.  **Predominance.** Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

177.  **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual

Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

178. Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

179. Likewise, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

      i. Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

      ii. Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

      iii. Whether Defendant's failure to institute adequate protective security measures amounted to negligence; and

      iv. Whether Defendant failed to take commercially reasonable steps to safeguard PII,

180. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have

already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/ NEGLIGENCE PER SE
### (On Behalf of Plaintiffs and the Class)

181.    Plaintiffs repeat and reallege paragraphs 1 through 180 of this Complaint and incorporate them by reference herein.

182.    Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII for pecuniary gain, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

183.    Defendant had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII.

184.    Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if the PII were wrongfully disclosed. The harm that Plaintiffs and Class Members experienced was within the zone of foreseeable harm known to Defendant.

185.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between each Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential PII, a mandatory step in opening an account and receiving services from CCU. While this special relationship exists independent from any contract, it is recognized by Defendant's privacy practices, as well as applicable laws and regulations. Specifically, Defendant actively solicited and gathered PII as part of its business and was solely responsible for and in the position to ensure that

its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class Members from a resulting data breach.

186. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs and the Class, to maintain adequate data security.

187. A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and the frequency of data breaches in general.

188. Defendant also had a common law duty to prevent foreseeable harm to others.

189. Plaintiffs and the Class were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Class, the critical importance of adequately safeguarding that PII, and the necessity of encrypting PII stored on Defendant's systems. It was foreseeable that Plaintiffs and Class Members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

190. Defendant's conduct created a foreseeable risk of harm to Plaintiffs and the Class.

191. Defendant's wrongful conduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decision not to comply with industry standards for the safekeeping of Plaintiffs' and the Class's PII, including basic encryption techniques available to Defendant.

192. Plaintiffs and the Class had and have no ability to protect their PII that was in, and remains in, Defendant's possession.

193. Defendant was in a position to effectively protect against the harm suffered by

Plaintiffs and the Class as a result of the Data Breach.

194. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft.

195. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

196. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII within Defendant's possession.

197. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII.

198. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

199. Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII to be compromised.

200. Pursuant to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), Defendant had a separate and independent duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

201. The FTCA is intended, in part, to protect individuals whose PII is maintained by

another and who are unable to safeguard their information as they cannot exercise control or direction over the data security practices.

202. Plaintiffs and the members of the Class are within the class of persons that the FTCA was intended to protect as their PII was collected and maintained by Defendant and they were unable to exercise control over Defendant's data security practices.

203. The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against.

204. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the members of the Class.

205. Defendant breached its duties to Plaintiffs and the members of the Class under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

206. Had Plaintiffs and the members of the Class known that Defendant would not adequately protect their PII, Plaintiffs and the members of the Class would not have entrusted Defendant with their PII.

207. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

208. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the members of the Class, they would not have been injured.

209. The injury and harm suffered by Plaintiffs and the members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiffs and

the members of the Class to experience the foreseeable harms associated with the exposure of their PII.

210.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiffs' and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class Members.

211.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

212.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer the continued risks of

**39**

exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

213. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class are now at an increased risk of identity theft or fraud.

214. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs are entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACT
## (On Behalf of Plaintiffs and the Class)

215. Plaintiffs repeat and reallege paragraphs 1 through 180 of this Complaint and incorporate them by reference herein.

216. Plaintiffs and the Class entrusted their PII to Defendant as a condition of opening an account and receiving services from CCU. In so doing, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised, or stolen.

217. At the time Defendant acquired the PII of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII and not take unjustified risks when storing the PII.

218. Implicit in the agreements between Plaintiffs and Class Members and Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide

Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiffs and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

219.    Plaintiffs and the Class would not have entrusted their PII to Defendant had they known that Defendant would make the PII internet-accessible, not encrypt sensitive data elements, and not delete the PII that Defendant no longer had a reasonable need to maintain it.

220.    Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

221.    Defendant breached the implied contracts it made with Plaintiffs and the Class by failing to safeguard and protect their personal information, and by failing to provide timely and accurate notice to them that their personal information was compromised as a result of the Data Breach.

222.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

223.    As a direct and proximate result of Defendant's above-described breach of implied

contract, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

**COUNT III**
**INVASION OF PRIVACY – INTRUSION UPON SECLUSION**
**(On Behalf of Plaintiffs and the Class)**

224.    Plaintiffs repeat and reallege paragraphs 1 through 180 of this Complaint and incorporate them by reference herein.

225.    Plaintiffs and Class Members have a legally protected privacy interest in their PII, which is and was collected, stored and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their PII against foreseeable unauthorized access, as occurred with the Data Breach.

226.    Plaintiffs and Class Members reasonably expected that Defendant would protect and secure their PII from unauthorized parties and that their PII would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

227.    Defendant intentionally intruded into Plaintiffs' and Class Members' seclusion by disclosing without permission their PII to a third party. Defendant's acts and omissions giving rise to the Data Breach were intentional in that the decisions to implement lax security and failure to timely notice Plaintiffs and the Class were undertaken willfully and intentionally.

228.    By failing to keep Plaintiffs' and Class Members' PII secure, and disclosing PII to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiffs' and Class Members' privacy right to seclusion by, *inter alia*:

        a.    intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

        b.    invading their privacy by improperly using their PII obtained for a specific

purpose for another purpose, or disclosing it to unauthorized persons;

c.  failing to adequately secure their PII from disclosure to unauthorized persons; and

d.  enabling the disclosure of their PII without consent.

229.    This invasion of privacy resulted from Defendant's intentional failure to properly secure and maintain Plaintiffs' and Class Members' PII, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded and private data.

230.    Plaintiffs' and Class Members' PII is the type of sensitive personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiffs' and Class Members' PII, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

231.    The disclosure of Plaintiffs' and Class Members' PII to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

232.    Defendant's willful and reckless conduct that permitted unauthorized access, exfiltration and disclosure of Plaintiffs' and Class Members' sensitive PII is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities.

233.    The unauthorized access, exfiltration, and disclosure of Plaintiffs' and Class Members' PII was without their consent, and in violation of various statutes, regulations and other laws.

234.    As a direct and proximate result of Defendant's intrusion upon seclusion, Plaintiffs and Class Members suffered injury and sustained actual losses and damages as alleged herein.

Plaintiffs and Class Members alternatively seek an award of nominal damages.

**COUNT IV**
**UNJUST ENRICHMENT/QUASI CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

235.    Plaintiffs repeat and reallege paragraphs 1 through 180 of this Complaint and incorporate them by reference herein.

236.    This Count is brought in the alternative to Count II, Breach of Implied Contract.

237.    Plaintiffs and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII. In so conferring this benefit, Plaintiffs and Class Members understood that part of the benefit Defendant derived from the PII would be applied to data security efforts to safeguard the PII.

238.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII.

239.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

240.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

241.    Defendant acquired the monetary benefit and PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

242. If Plaintiffs and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

243. Plaintiffs and Class Members have no adequate remedy at law.

244. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in its continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

245. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

246. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class defined herein, pray for

judgment against Defendant as follows:

a.) For an Order certifying this action as a Class action and appointing Plaintiffs and their counsel to represent the Class;

b.) For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

c.) For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Breach;

d.) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e.) Ordering Defendant to pay for lifetime credit monitoring services for Plaintiffs and the Class;

f.) For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g.) For an award of punitive damages, as allowable by law;

h.) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.) Pre- and post-judgment interest on any amounts awarded and,

j.) All such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury.

DATED: January 7, 2026

Respectfully submitted,
/s/  James J. Reardon, Jr.
**REARDON SCANLON LLP**
James J. Reardon, Jr. ct13802
james.reardon@reardonscanlon.com
45 S. Main St., 3rd Floor
West Hartford, CT 06107
Tel: (860) 955-9455

**SHAMIS & GENTILE P.A.**
Leanna Loginov. Esq. (admitted pro hac vice)
lloginov@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299

**LEVI & KORSINSKY, LLP**
Mark S. Reich (admitted *pro hac vice*)
Melissa G. Meyer (admitted *pro hac vice*)
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mmeyer@zlk.com

**FEDERMAN & SHERWOOD**
William B. Federman (admitted *pro hac vice*)
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Email: wbf@federmanlaw.com

**COLE & VAN NOTE**
Laura Van Note Esq. (admitted *pro hac vice*))
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:(510) 891-9800
Facsimile: (510) 891-7030
Email:   lvn@colevannote.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (admitted *pro hac vice*)

47

2000 Pennsylvania Avenue NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Email: hzavareei@tzlegal.com

**SCHUBERT JONCKHEER & KOLBE LLP**
Amber L. Schubert (admitted *pro hac vice*)
2001 Union Street, Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Email: aschubert@sjk.law

*Attorneys for Plaintiffs and the Putative Class*

48

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SUSAN THOMAS**, **MINDEA GAUSE**, **ALFRED MAIO**, **MICHELLE CARLISLE**, **KATHLEEN REGAN LUCIANI** and **STEVEN DOUGLASS**, individually and on behalf of all others similarly situated, | Lead Case No. 3:25-cv-01292-SVN |
| | JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| **CONNEX CREDIT UNION, INC.**, | |
| Defendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2026, a true and correct copy of the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_/s/ James J. Reardon, Jr._
James J. Reardon, Jr.

**49**