**U.S. DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SUSAN THOMAS, MINDEA GAUSE, ALFRED MAIO, MICHELLE CARLISLE, KATHLEEN REGAN LUCIANI and STEVEN DOUGLASS, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CONNEX CREDIT UNION, INC.,<br><br>    Defendant. | (<br>(  LEAD CASE NO: 3:25-CV-01292-SVN<br>(<br>(<br>(<br>(<br>(<br>(<br>(  May 4, 2026<br>(<br>(<br>(<br>(<br>( |

**DEFENDANT CONNEX CREDIT UNION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PRSUANT TO 12(b)(1) AND 12(b)(6)**

Defendant Connex Credit Union, Inc. ("Connex") respectfully moves this Court for an order dismissing the Consolidated Class Action Complaint (the "Complaint") filed by Susan Thomas, Mindea Gause, Alfred Maio, Michelle Carlisle, Kathleen Regan Lucianai, and Steven Douglass ("Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and for such other further relief as this Court deems just and proper.

## INTRODUCTION

This putative class action arises from a data security incident involving unauthorized access into Connex's network between June 2 and 3, 2025 (the "Incident"). Plaintiffs allege that an unknown third-party criminal actor accessed files that may have contained names, account numbers, Social Security numbers, and/or government identification information used to open member accounts. Compl. ¶¶ 2-3, 39-40. Connex's post-intrusion notice to members ("Notice Letter") advised that it had "no reason to believe this incident involved unauthorized access to member accounts or funds." Compl. ¶ 3. Plaintiffs nonetheless seek to transform the fact of a

cyberattack into a federal class action based on conclusory allegations of future risk, generalized anxiety, time spent monitoring accounts, alleged diminution in value of personal information, increased spam, and a handful of vague assertions of suspicious activity that are spurious and not plausibly tied to the information allegedly involved in the Incident.

AS a threshold matter, this Court should decline to exercise justification pursuant to the Class Action Fairness Act's "home state" exception. There is no question that Connex is the sole defendant here and a citizen of the state of Connecticut. Even more, 84% of the putative class are residents of Connecticut and were issued notice to Connecticut addresses less than one year ago. Even more, based on Connex's business, including the area that it serves, and the recent mailing addresses for the putative class, this Court can infer that the home state exception's citizenship requirement is satisfied here.

Even if the Court did not decline to exercise jurisdiction, the Complaint should be dismissed at the threshold for lack of Article III standing. Plaintiffs' allegations largely depend on the proposition that because a cyberattack occurred, identity theft or fraud might happen later. But threatened future harm must be "certainly impending," and "the mere risk of future harm, standing alone cannot qualify as a concrete harm" in a suit for damages. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 416 (2013); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436-37 (2021). The Second Circuit likewise requires a concrete, particularized, actual or imminent injury. *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 299-300 (2d Cir. 2021). Plaintiffs' allegations do not satisfy that standard. Two Plaintiffs, Carlisle and Douglass, do not allege any actual misuse at all. The remaining Plaintiffs rely on suspicious PayPal activity, a dark-web alert for an email address or phone number, fraudulent charges to a Key Bank account, suspicious Microsoft or Facebook login attempts, or unspecified debit-card or bank-account activity. Compl. ¶¶ 84, 93-94, 109, 150, 164.

Those allegations do not establish Article III standing because they are vague, unsupported by facts showing unreimbursed loss, and disconnected from the data elements allegedly involved in the Incident.

Plaintiffs also fail to plead traceability. Article III requires "a causal connection between the injury and the conduct complained of," and the injury must be "fairly . . . traceable" to Defendant rather than "the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, the Complaint itself identifies the alleged wrongdoer as an "unknown and unauthorized criminal actor." Compl. ¶ 2. Plaintiffs do not allege facts showing that the alleged PayPal activity, email and phone dark-web alert, Key Bank charges, Facebook or Microsoft login attempts, or increased spam were caused by Connex, as opposed to the ordinary background reality of spam, prior breaches, phishing, or unrelated third-party criminal activity. Allegations based on temporal sequence alone are not traceability.

Even if the Court were to reach Rule 12(b)(6), each claim fails. Plaintiffs' negligence claim is barred by Connecticut's economic loss doctrine and, in any event, fails to plead a non-conclusory breach, causation, or actual damages. Plaintiffs' negligence per se theory improperly attempts to convert Section 5 of the Federal Trade Commission Act ("FTC Act") into a private cause of action and does not identify a Connecticut statute that supplies a privately enforceable standard of care. Plaintiffs' implied contract claim fails because the Complaint alleges no definite promise, mutual assent, or consideration for a separate contractual undertaking to provide particular cybersecurity measures. Plaintiffs' intrusion upon seclusion claim fails because Connex did not intentionally intrude into Plaintiffs' private affairs and an alleged failure to prevent a third-party cyberattack is not an intentional privacy tort. Finally, unjust enrichment fails because Plaintiffs received the

financial services for which they bargained, and the Complaint does not plausibly allege that Connex retained a specific benefit that equity requires it to disgorge.

For these reasons, the Court should dismiss the Complaint in its entirety under Rules 12(b)(1) and 12(b)(6).

## **FACTUAL BACKGROUND**

Connex is a Connecticut credit union headquartered in North Haven, Connecticut. Compl. ¶¶ 30-31. Plaintiffs allege that Connex collects personally identifiable information in the ordinary course of providing financial services and that Plaintiffs provided information to Connex as a condition of opening accounts or receiving services. Compl. ¶¶ 32-38, 70, 86, 101, 112, 131, 152.

On or around June 3, 2025, Connex detected unusual activity in its cyber environment and immediately began an investigation using independent experts,. Upon investigation Connex learned that some files had been accessed or downloaded without authorization between June 2 and 3, 2025. Compl. ¶¶ 2-3, 39. Connex's notice to impacted individuals stated that the information may have included "name, account number, Social Security number, and/or government ID used to open your account," and expressly advised that Connex had "no reason to believe this incident involved unauthorized access to member accounts or funds." Compl. ¶¶ 3, 39-40.

Plaintiffs' alleged injuries fall into several categories. First, all Plaintiffs allege a risk of future identity theft or fraud, lost time, inconvenience, anxiety, loss of privacy, and diminution in the value of their personally identifiable information ("PII"). Compl. ¶¶ 6, 13-18, 77-83, 95-100, 108-111, 123-130, 143-149, 163-169. Second, some Plaintiffs allege increased spam calls, texts, or emails. Compl. ¶¶ 93-94, 109, 164. Third, some Plaintiffs allege suspicious activity involving accounts that are not alleged to have been involved in the Incident: Thomas alleges suspicious PayPal activity, unspecified suspicious login attempt alerts, and a Google dark-web notification;

Gause alleges an Experian notification involving her email address and phone number; Maio alleges Key Bank charges, suspicious Microsoft and Facebook login attempts, and increased spam; and Luciani alleges unspecified fraudulent charges and unauthorized activity on debit cards and bank accounts. Compl. ¶¶ 84, 93-94, 109, 150. Carlisle and Douglass do not allege any actual fraudulent account activity. Compl. ¶¶ 112-130, 152-169.

Based on those allegations, Plaintiffs assert four claims: negligence/negligence per se, breach of implied contract, invasion of privacy by intrusion upon seclusion, and unjust enrichment/quasi contract. Compl. ¶¶ 181-246. Although Plaintiffs seek injunctive and equitable relief in the prayer for relief, they do not plead a separate declaratory judgment cause of action in the operative Complaint. Compl. ¶¶ 235-246; Prayer for Relief.

## **LEGAL STANDARD**

A motion to dismiss for lack of Article III standing is properly brought under Rule 12(b)(1). Plaintiffs bear the burden of establishing the "irreducible constitutional minimum" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560). Standing requires Plaintiffs to show "(i) that [each] suffered an injury in fact that is concrete, particularized and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In the Second Circuit, a plaintiff must show that the alleged injury is "concrete, particularized, and actual or imminent." *McMorris*, 995 F.3d at 299-300. "The party invoking federal jurisdiction bears the burden of establishing each element of standing, which must be supported in the same way as any other matter on which the plaintiff bears the burden of proof[.]" *Id*. at 300.

Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Court need not credit "conclusory allegations or legal conclusions masquerading as factual conclusions." *Acker v. King*, 2019 WL 1558623 at *1 (D.Conn. 2019).

## ARGUMENT

### I. The Court Must Decline Jurisdiction under CAFA because the Mandatory Home-State Exception Applies

Plaintiffs' sole basis for pursuing this matter in federal court is CAFA. Compl. ¶ 21. However, this Court must decline to exercise jurisdiction under CAFA's "home state" exception. This exception, along with the local controversy exception, was "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state court to retain cases when the controversy is strongly linked to that state." *Simmons v. Ambit Energy Holdings, LLC*, 2014 WL 5026252, at *6 (S.D.N.Y. Sept. 30, 2014). In this regard, the home-state exception requires a federal court to decline jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). The local controversy exception similarly requires the Court to decline jurisdiction when greater than two-thirds of the class are citizens of the forum state, at least one significant defendant is a citizen of that state, and the alleged injuries were incurred there. 28 U.S.C. § 1332(d)(4)(A).

Connex is one of Connecticut's largest credit unions serving more than 70,000 members across 8 branches, *see* Compl. ¶ 31, all of which are located in and around Connecticut. There is no equivocating that Connex, the sole defendant, is a citizen of Connecticut with its principal place

of business in North Haven, Connecticut. Compl. ¶ 30. Even more, the Complaint concedes that a substantial part of the relevant events occurred in Connecticut. Compl. ¶¶ 22-23, 30-31.

That only leaves the question of whether the proposed class consists of at least two-thirds Connecticut citizens. There is no question that it does. The putative class consists of 177,321 individuals, of which notice was sent to 149,109 with home addresses in Connecticut less than one year ago – meaning 84% of the class consists of Connecticut residents. *See* Exhibit A, David Birkins, Connex's Executive Vice President and Chief Financial Officer. This is mirrored among the named Plaintiff population where five of the six named Plaintiffs are Connecticut citizens, *see* Compl. ¶¶ 24-29, and received notice because Connex had their Connecticut home address on file. Given that 84% of the proposed class provided Connecticut residential addresses when seeking services and products from Connex, including products such as home mortgages, the Court can, and should, reasonably infer that at least two-thirds of the proposed class are Connecticut residents, satisfying the threshold for the home state exception.

When assessing the applicability of CAFA's jurisdictional exceptions, "[c]ourt[s] simply may make reasonable assumptions about the makeup of the putative class." *Frankfurter v. Community Health Center, Inc.*, 2026 WL 352747, at *8 (D.Conn., 2026) (internal quotations omitted); *Int'l House v. Consolidated Edison Co. of N.Y.*, 2023 WL 2898623, at *4 (S.D.N.Y. Apr. 11, 2023); *Gaska v. DARCARS of R.R. Ave., Inc.*, 673 F. Supp. 3d 157, 167 (D. Conn. 2023) ("A Court may infer citizenship for the purposes of evaluating whether the citizenship requirement of a CAFA exception has been met."). And courts routinely consider "actual mailing addresses maintained by Defendants" as highly probative indicia of citizenship, sufficient for purposes of evaluating whether CAFA exceptions apply. *See*, *e.g.*, *Richins v. Hofstra U.*, 908 F. Supp. 2d 358, 363 (E.D.N.Y. 2012) (inferring citizenship from "actual mailing addresses maintained by

Defendants" because they are "highly probative of the issue of the citizenship of the Plaintiff Class"); *Frankfurter*, 2026 WL 352747, at *8, 9);  *Weider v. Verizon New York Inc.*, 2015 WL 3474102, at *2 (E.D.N.Y. June 2, 2015) (finding it "eminently reasonable" to assume that putative class members with New York addresses were New York citizens).

Even if the home state exception does not apply, the Court should still exercise its discretion to decline to exercise jurisdiction under CAFA. *See Int'l House*, 2023 WL 2898623, at *5. This case involves a local dispute concerning purely state law allegations against a credit union that solely services Connecticut residents, brought on behalf of a proposed class of which 84% provided a Connecticut address when seeking services and products, including residential mortgage products. In other words, this case is not a "major class action[] with interstate  features in state courts." *Coffey v. Freeport McMoran Copper & Gold, Inc.*, 581 F.3d 1240, 1243 (10th Cir. 2009)

Because Connex is a Connecticut defendant and the overwhelming majority of the putative class resides in Connecticut, the address data supports a reasonable inference that more than two-thirds of the proposed class are Connecticut citizens for purposes of CAFA's home-state exception. The Court should therefore decline jurisdiction under 28 U.S.C. § 1332(d)(4)(B) if it reaches this issue.

## II.    <u>Plaintiffs lack Article III Standing</u>

Plaintiffs lack standing because they have not pleaded a concrete, particularized injury-in-fact that is actual or imminent and fairly traceable to Connex. Plaintiffs' theory rests on a cyberattack by unknown third-party criminals and an alleged risk that stolen information might be used later. That is not enough. To be imminent, a threatened future injury must be "certainly impending." *Clapper*, 568 U.S. at 409, 416. Allegations of possible future harm do not confer standing. *Id*. Nor

may Plaintiffs "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id*. at 416.

### a. Plaintiffs do not allege a concrete injury-in-fact.

Plaintiffs' first asserted injury is the risk of future identity theft and fraud. But "in a suit for damages, the mere risk of future harm, standing alone cannot qualify as a concrete harm" without evidence that Plaintiffs were "harmed by their exposure to the risk itself." *TransUnion*, 594 U.S. at 436-37. The Complaint alleges that information may have been accessed or downloaded and that Plaintiffs therefore face a heightened risk of future misuse. Compl. ¶¶ 2-3, 13-18, 41, 82, 97, 128, 148, 167. These allegations describe a speculative possibility, not an injury that is actual, imminent, or certainly impending.

This is particularly true for Plaintiffs Carlisle and Douglass, who do not allege any actual fraudulent account activity or identity theft. Carlisle alleges lost time, anxiety, loss of privacy, diminution in value, and future risk. Compl. ¶¶ 123-130. Douglass alleges similar harms, plus an uptick in spam calls, messages, and emails. Compl. ¶¶ 163-169. Neither alleges unreimbursed fraudulent charges, opened accounts, identity theft, or any concrete financial loss. Under *Clapper*, *TransUnion*, and *McMorris*, these allegations are insufficient.

Plaintiffs' prophylactic time and costs do not cure the standing defect. Without an imminent risk of future harm, mitigation expenses and time spent monitoring accounts are self-imposed and cannot create standing. "Courts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy." *Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008). The Second Circuit likewise has found allegations about time lost insufficient where the plaintiff "pleaded no specifics about any time or effort that

she herself has spent monitoring her credit." *Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 91 (2d Cir. 2017). Plaintiffs here generally allege time spent reviewing accounts, monitoring credit, changing passwords, verifying the notice, and investigating the breach. Compl. ¶¶ 77-78, 91, 95, 108-109, 123, 137, 143-144. These allegations are generalized and flow from fear of future misuse, not from a concrete injury.

Plaintiffs' alleged diminution in the value of their PII also does not establish standing. Courts in the Second Circuit have "consistently rejected allegations that the diminution in value of personal information can support standing." *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022) (internal quotation marks omitted). This theory fails where plaintiffs "have not alleged that they attempted to sell their personal information or that, if they have, the data breach forced them to accept a decreased price for that information." *Id*. Plaintiffs do not allege that they ever sold or attempted to sell their PII, that Connex deprived them of possession of their information, or that any market transaction was affected by the Incident. *See also Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 913 (7th Cir. 2017) ("Time Warner did not take the plaintiff's personal information away from him; he still has it …; he hasn't been deprived of anything; and he isn't asking Time Warner to return his personal information in its files to him."); *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 849 (N.D. Ill. 2020) (rejecting theory because plaintiffs did not plead they sold their data or would consider doing so).

Plaintiffs' spam allegations likewise do not establish standing. Spam calls, texts, and emails are common and do not become a concrete Article III injury simply because a plaintiff alleges that they increased after a data incident. *Cooper*, 2022 WL 170622, at *5 ("Courts have generally rejected the theory that unsolicited calls or emails constitute an injury in fact."); *Barbara Reynolds Burger, et. al v. Healthcare Mgmt. Solutions, LLC et. al*, No. CV RDB-23-1215, 2024 WL 473735,

10

at *6 (D. Md. Feb. 7, 2024) (dismissing "generic allegation of increased spam calls and emails" where plaintiff failed to allege the compromised data included the information necessary to cause that spam and the allegations "confuse[] correlation with causation."); *McCombs v. Delta Grp. Elecs., Inc.*, No. 1:22-CV-00662-MLG-KK, 2023 WL 3934666, at *6 (D.N.M. June 9, 2023) ("Spam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications."); *Liau v. Weee! Inc.*, No. 23 CIV. 1177 (PAE), 2024 WL 729259, at *6 (S.D.N.Y. Feb. 22, 2024) ("[C]ourts have generally rejected the theory that unsolicited calls or emails constitute an injury in fact."). Here, the Notice Letter identified names, account numbers, Social Security numbers, and/or government IDs as potentially involved, and specifically stated that member accounts or funds were not accessed. Compl. ¶¶ 3, 39-40. Plaintiffs' allegations of increased spam are not concrete injuries and, in any event, are not tied to the information allegedly involved.

Nor do Plaintiffs' anxiety and emotional distress allegations establish Article III injury. Courts routinely reject bare anxiety-based standing theories. *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023) ("[W]orry and anxiety are not the kind of concrete injury essential to standing. If they were, almost everyone could litigate about almost anything, because just about everything anyone does causes some other people to fret."); *Garland v. Orlans* PC, 999 F.3d 432, 439 (6th Cir. 2021) ("[A] bare allegation of anxiety is not a cognizable, concrete injury."). Alleged "annoyance, interference, inconvenience, anxiety, and increased concerns for the loss of [their] privacy" are insufficient where they are "premised on a speculative risk of harm that is too abstract to constitute an injury in fact." *Rivera-Marrero*, 2023 WL 2744683, at *12. Plaintiffs allege stress, anxiety, lost sleep, and fear that they must remain vigilant. Compl. ¶¶ 78, 80-81, 98, 110, 124-127,

144-147, 165-166. Those allegations are based on fear of future harm and do not plead a concrete Article III injury.

Finally, the allegations of suspicious activity by Thomas, Gause, Maio, and Luciani are insufficient. Thomas alleges suspicious PayPal activity, unspecified login alerts, and a Google notification that her information may be exposed on the dark web. Compl. ¶ 84. Gause alleges an Experian notification that her email address and phone number were found on the dark web. Compl. ¶ 93. Maio alleges fraudulent charges on a Key Bank account, suspicious Microsoft and Facebook login attempts, and related costs. Compl. ¶ 109. Luciani alleges fraudulent charges and unauthorized activity on unspecified debit cards and bank accounts, leading to overdraft charges. Compl. ¶ 150. These allegations are vague and fail to allege facts showing that any loss was unreimbursed or that any charge or attempted login involved the data allegedly implicated in the Incident. Allegations of unauthorized charges for which Plaintiffs received reimbursement do not confer standing. *Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 582 (E.D.N.Y. 2015), aff'd, 689 F. App'x 89 (2d Cir. 2017) (dismissing data breach claims for lack of standing because plaintiff failed to allege unreimbursed charges). Plaintiffs cannot satisfy their burden with generalized assertions that suspicious activity occurred sometime after the Incident.

### b. Plaintiffs do not plausibly allege traceability.

Even if Plaintiffs had pleaded a concrete injury, the Complaint would still fail because Plaintiffs do not allege facts showing that their asserted injuries are fairly traceable to Connex. Traceability requires more than the fact that a data incident occurred before a plaintiff noticed suspicious activity. It requires "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The alleged injury must be fairly traceable to Connex, not the independent actions of unknown third parties. Id. at 560-61. A "speculative chain of possibilities"

12

is insufficient. *Clapper*, 568 U.S. at 414. The traceability element "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." *Dantzler, Inc. v. Empresas Berrios Inventory & Operations., Inc.*, 958 F.3d 38, 47 (1st Cir. 2020).

The Complaint alleges that the Incident may have involved "name, account number, Social Security number, and/or government ID used to open your account," and that Connex had "no reason to believe this incident involved unauthorized access to member accounts or funds." Compl. ¶¶ 3, 39-40. Yet Plaintiffs attempt to connect the Incident to PayPal activity, email and phone dark-web alerts, Key Bank charges, Microsoft and Facebook login attempts, spam calls, texts, emails, and unspecified debit-card or bank-account activity. Compl. ¶¶ 84, 93-94, 109, 150, 164. The Complaint does not allege facts showing how the information allegedly involved in the Incident would have enabled those particular events. It does not allege that PayPal credentials, email addresses, phone numbers, Key Bank account information, debit-card numbers, Facebook credentials, Microsoft credentials, or member-account funds were involved.

Plaintiffs' theory depends on a temporal inference: suspicious activity occurred after the Incident, so the Incident must have caused it. That inference is not plausible without facts tying the suspicious activity to the data elements allegedly accessed. The background reality of modern data breaches, phishing, spam, and unrelated account compromise makes causation particularly speculative. Plaintiffs' own generalized allegations concerning the prevalence of data breaches underscore the point. Compl. ¶¶ 48-53. Because Plaintiffs do not plead a non-speculative causal chain connecting Connex's alleged conduct to any concrete injury, the Complaint should be dismissed for lack of standing.

13

###### c. Plaintiffs lack standing to seek injunctive relief.

Plaintiffs' request for injunctive relief should be dismissed because Plaintiffs have not plausibly alleged a sufficiently imminent and substantial risk of future harm traceable to Connex that would be redressed by the forward-looking relief they seek. Although *TransUnion* recognizes that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial," that standard still requires more than speculative fear or generalized allegations that future identity theft may occur. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Plaintiffs must demonstrate standing separately for each form of relief sought, and their request for injunctive relief therefore requires a forward-looking injury that is concrete, particularized, imminent, traceable to Connex, and likely to be redressed by the requested relief. *Id.*; *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295 (2021); *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276 (2023).

In the data-breach context, the Second Circuit applies the *McMorris* framework to determine whether an alleged risk of future identity theft or fraud is sufficiently actual or imminent. Courts consider three non-exhaustive factors: "(1) whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data; (2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud; and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud." *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295 (2021). *Bohnak* reaffirmed that *McMorris* continues to govern the "actual or imminent" component of injury-in-fact in data-breach cases after *TransUnion*. *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276 (2023). Thus, although risk-based standing may be available in an appropriate

14

case, Plaintiffs must still plead facts showing that the alleged risk is substantial and imminent under the *McMorris* factors.

Plaintiffs have not done so here. At most, Plaintiffs allege that an unauthorized actor accessed or downloaded certain files between June 2 and 3, 2025, and that the information potentially involved may have included names, account numbers, Social Security numbers, and/or government IDs used to open accounts. Compl. ¶¶ 2-3, 39-40. But Plaintiffs do not allege facts showing that the information was published, sold, or otherwise actually used by the threat actor. Nor do they allege facts showing that any portion of the dataset has been misused in a manner plausibly connected to the Incident. The Complaint alleges suspicious PayPal activity, dark-web alerts involving an email address and phone number, spam calls, Key Bank charges, Microsoft and Facebook login attempts, and unspecified debit-card or bank-account activity. Compl. ¶¶ 84, 93-94, 109, 150, 164. But those allegations do not match the data elements identified in the Notice Letter, which stated that the potentially involved information may have included names, account numbers, Social Security numbers, and/or government IDs, and further stated that Connex had "no reason to believe this incident involved unauthorized access to member accounts or funds." Compl. ¶¶ 3, 39-40. Plaintiffs therefore do not plead facts showing that any alleged suspicious activity resulted from misuse of the dataset at issue, rather than from unrelated spam, phishing, prior breaches, or independent third-party conduct.

This case is therefore distinguishable from cases finding standing for injunctive relief where the alleged facts satisfied at least two *McMorris* factors. In *Bohnak*, the Second Circuit found standing where a targeted hack exposed the plaintiff's name and Social Security number to an unauthorized actor, concluding that those allegations were "sufficient to suggest a substantial likelihood of future harm." *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276 (2023).

In *Murray v. Connecticut College*, the District of Connecticut likewise found standing for injunctive relief where the plaintiff alleged a targeted attack involving highly sensitive PII and personal health information, including a full name, Social Security number, financial aid information, taxpayer identification number, driver's license number, and medical records. *Murray v. Connecticut College*, 2025 WL 2712664 (2025). And in *Jones v. Sturm, Ruger & Company, Inc.*, the court found standing where payment-card data was stolen in a targeted cyberattack and some plaintiffs alleged actual fraudulent charges. *Jones v. Sturm, Ruger & Company, Inc.*, Not Reported in Fed. Supp. (2024). Here, by contrast, Plaintiffs have not pleaded non-conclusory facts showing actual misuse of the Connex dataset, and their allegations of suspicious activity are not plausibly tied to the information allegedly involved in the Incident.

The Complaint instead relies on generalized allegations that Plaintiffs' information may be misused in the future and that Connex should be ordered to adopt additional safeguards. That is insufficient. In *Yankovich v. Applus Technologies, Inc.*, the District of Connecticut dismissed claims for lack of standing even though the incident involved a targeted malware attack, because plaintiffs failed to allege actual misuse and the data at issue did not present a sufficiently substantial risk of identity theft. *Yankovich v. Applus Technologies, Inc.*, 621 F.Supp.3d 269 (2022). Likewise, *McMorris* affirmed dismissal where the plaintiffs could not establish a sufficiently substantial risk of future misuse, emphasizing that sensitivity of information alone, without a targeted theft or evidence of misuse, did not establish standing. *McMorris v. Carlos Lopez & Associates, LLC*, 995 F.3d 295 (2021). Here, even if Plaintiffs point to the sensitivity of Social Security numbers, they still must plead facts showing a sufficiently imminent and substantial risk of future harm. Their allegations do not clear that threshold because they do not plausibly connect any alleged misuse to this Incident.

Plaintiffs also lack standing to seek injunctive relief because the requested relief is not tied to a redressable future injury. Plaintiffs ask the Court to require Connex to implement additional cybersecurity measures, provide monitoring, and take other future-facing remedial steps. But the Complaint acknowledges that Connex investigated the Incident with independent experts, notified federal law enforcement and regulators, and implemented measures to enhance network security and minimize the risk of a similar incident in the future. Compl. ¶¶ 3, 39. Plaintiffs do not allege facts showing that they are likely to be harmed by the same alleged cybersecurity deficiencies going forward, or that an injunction directed at Connex's current systems would prevent the alleged future misuse of information already allegedly accessed by an unknown third party. Because the alleged future identity theft risk depends on the independent acts of unknown criminal actors—not on ongoing conduct by Connex—Plaintiffs have not established that the requested injunction would likely redress their alleged injuries.

Nor can Plaintiffs pursue injunctive relief on behalf of a putative class without satisfying Article III. Courts cannot permit injunctive relief where plaintiffs would otherwise lack standing to seek such relief. *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2020). Rule 23(b)(2) certification is reserved for cases where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," and where injunctive relief predominates in cases seeking both injunctive and monetary relief. *Haddock v. Nationwide Financial Services, Inc.*, 272 F.R.D. 61 (2010). Plaintiffs' individualized allegations of alleged suspicious account activity, spam communications, anxiety, and monitoring time do not establish a common, imminent, and redressable future injury appropriate for injunctive relief. Accordingly, Plaintiffs' request for injunctive relief should be dismissed.

17

III.     **PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(B)(6).**

Even if Plaintiffs had standing, the Complaint should be dismissed under Rule 12(b)(6). Plaintiffs' claims are built on conclusory allegations that Connex must have acted unlawfully because a cyberattack occurred. The law requires more. Plaintiffs must plead facts supporting each element of each claim, including duty, breach, causation, and damages where applicable. They have not done so.

### a.   Plaintiffs fail to state a negligence or negligence per se claim.

Plaintiffs' negligence/negligence per se claim fails for several independent reasons. Under Connecticut law, to state a negligence claim, a plaintiff must plead duty, breach, causation, and actual injury. *Modise v. CareOne HealthServices, LLC*, 658 F.Supp.3d 44, 50 (D.Conn. Feb. 27, 2023); *Stein v. Tong*, 117 Conn.App. 19, 27, 979 A.2d 494 (2009). Plaintiffs have not plausibly pleaded those elements.

First, the negligence claim is barred by the economic loss doctrine. In Connecticut, the economic loss doctrine "reflects the principle that a plaintiff cannot sue in tort for purely monetary loss unaccompanied by physical injury or property damage." *Raspberry Junction Holding, LLC v. Se. Conn. Water Auth.*, 340 Conn. 200, 202, 263 A.3d 796 (2021). "[T]he economic loss doctrine bars negligence claims that arise out of and are dependent on breach of contract claims that result only in economic loss." *Ulbrich v. Groth*, 310 Conn. 375, 410, 78 A.3d 76 (2013). In *Jones v. Sturm, Ruger & Company, Inc.*, the District of Connecticut applied the economic loss doctrine in a data-breach case and dismissed negligence claims where the tort allegations were essentially identical to the contract allegations. *Jones v. Sturm, Ruger & Co., Inc.*, 2024 WL 1307148, (D. Conn. Mar. 27, 2024). Here, Plaintiffs' negligence and implied contract claims rest on the same alleged failure to safeguard PII and provide timely notice. Compl. ¶¶ 181-223. Plaintiffs seek

18

economic damages, lost time, mitigation costs, benefit-of-the-bargain damages, diminution in value, and related monetary relief. Compl. ¶¶ 210-214, 222-223. They do not allege physical injury or property damage. The economic loss doctrine therefore bars the negligence claim.

Plaintiffs cannot avoid the economic loss doctrine by invoking anxiety, loss of privacy, or emotional distress. Connecticut requires more than generalized distress. Emotional distress claims require severe distress, and Connecticut does not generally permit recovery absent sufficiently concrete manifestations of harm. *Perodeau v. City of Hartford*, 792 A.2d 752, 764 (Conn., 2002); *Chamberland v. Physicians for Women's Health, LLC*, 2006 WL 437553, at *2 (Conn.Super., 2006). Plaintiffs allege fear, anxiety, stress, and lost sleep in boilerplate terms. Compl. ¶¶ 78, 81, 98, 110, 124-127, 144-147, 165-166. Those allegations do not transform an economic-loss claim into a viable tort claim.

Second, Plaintiffs fail to plead breach. They allege that Connex failed to implement adequate security measures, monitor its systems, encrypt PII, train employees, and comply with industry standards. Compl. ¶¶ 10-12, 42, 54-57, 191-198. But the Complaint does not identify specific facts showing what security measures Connex used, what particular mandatory measures it failed to use, or how any specific omission caused the Incident. Merely alleging that an incident occurred is insufficient to show that data security was unreasonable. *See In re MCG Health Data Sec. Issue Litig.*, No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428, at *3 (W.D. Wash. Mar. 27, 2023) ("Plaintiffs' claim that MCG Health's system fell below an ill-defined standard is conclusory. Therefore, the Court finds Plaintiffs failed to properly allege that MCG Health's data security was inadequate, resulting in a breach of a duty"). Plaintiffs' theory is impermissibly *res ipsa*-like: because a cyberattack occurred, Connex must have been negligent. Courts reject such conclusory pleading. *Griffey v. Magellan Health Incorporated*, 562 F. Supp. 3d 34, 50 (D. Az.

19

2021) ("Alleging that a system was inadequate because a negative result occurred is conclusory, and Plaintiffs' claim that [the defendant's] system fell below an ill-defined standard is conclusory").

Third, Plaintiffs' reliance on FTC guidance, industry standards, and generalized cybersecurity expectations does not supply a negligence duty or breach. Citation to general regulatory or industry guidance cannot give rise to a negligence claim. *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 CIV. 7908 PAE, 2013 WL 2631043, at *6 (S.D.N.Y. June 11, 2013) (dismissing negligence claim and noting that "fundamentally, as a matter of law, a trade association's recommendations do not create new legal duties for its members"); *Razuki v. Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *1-2 (S.D. Cal. Nov. 15, 2018) (dismissing amended complaint basing claims on FTC security publications); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (negligence claim based on FTC's authorities "barred"). Plaintiffs do not identify any concrete, enforceable standard that Connex violated, much less facts showing how Connex violated it.

Fourth, Plaintiffs fail to plead causation and damages. As explained above, the Complaint does not plausibly connect the alleged PayPal activity, Key Bank charges, email or phone dark-web alerts, Facebook or Microsoft login attempts, spam, or unspecified debit-card and bank-account activity to the information allegedly involved in the Incident. Compl. ¶¶ 84, 93-94, 109, 150, 164. The Notice Letter stated that Connex had no reason to believe member accounts or funds were accessed. Compl. ¶¶ 3, 39. Plaintiffs' alleged injuries are therefore speculative and not plausibly caused by Connex. Without actual injury, the negligence claim fails. "Conduct that is merely negligent, without proof of an actual injury, is not considered to be a significant

20

interference with the public interest such that there is any right to complain of it, or to be free from it." *Right v. Breen*, 277 Conn. 364, 377 (2006).

The negligence per se theory fails as well. Plaintiffs base this theory primarily on Section 5 of the Federal Trade Commission Act. Compl. ¶¶ 200-207. But the FTC Act does not create a private right of action and cannot be used to manufacture one through negligence per se. *Koehler v. New Am. Funding,* 2024 WL 3338782, at *6 (E.D. Mo. July 8, 2024) ("It is well-established, however, that the FTC Act creates no private right of action."). Allowing Plaintiffs to enforce such statutes indirectly through negligence per se "would be inconsistent with ... the legislative scheme." *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 118 (2011). If "every statute that specified a standard of care would be automatically enforceable by tort suits for damages— every statute in effect would create an implied private right of action—which clearly is not the law." *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004).

Connecticut law likewise requires more than a citation to a statute or regulation. To establish negligence per se, a plaintiff must show that the defendant violated a statute, regulation, or other legal standard, that plaintiff was within the class of persons intended to be protected, and that the injury is of the type the statute was designed to prevent. *Shukis v. Bd. of Educ. of Reg'l Dist. No. 17*, 122 Conn. App. 555 (Conn. App. 2010). In determining whether statutory liability exists, courts look to legislative intent. Shukis at 152 ("In deciding whether the legislature intended to provide for such statutory liability, we look to the language of the statute and to the legislative history and purposes underlying the provision's enactment."). Plaintiffs do not identify a Connecticut statute that creates a private negligence per se claim for the alleged conduct here. Count I should be dismissed.

21

### b. Plaintiff fails to state a breach of implied contract claim.

Plaintiffs' implied contract claim fails because they do not plead facts showing mutual assent, definite terms, consideration, breach, or damages. Under Connecticut law, "an implied contract is not expressed in words, but is implied from the conduct of the parties." *Jones*, 2024 WL 1307148, at *9. An implied contract may arise where one party renders services under circumstances indicating an expectation of payment or performance and the other knowingly accepts the benefit. *Metzner v. Quinnipiac Univ.*, 528 F.Supp.3d 15, 31-32 (D.Conn. Mar. 25, 2021). The basic elements remain formation, performance, breach, and damages. *Drew Wolf 208 Seymour Ave. LLC v. Steven Tolin Enters.*, LLC, 2023 WL 4882556 (Conn. Super. Ct. 2023).

The Complaint alleges that Plaintiffs entrusted PII to Connex as a condition of opening accounts or receiving services, and that an implied contract arose requiring Connex to safeguard the information and provide timely notice. Compl. ¶¶ 216-223. These allegations are conclusory. Plaintiffs do not identify any communication, account term, membership agreement provision, statement, or course of conduct showing that Connex agreed to particular data-security obligations enforceable as contract terms. They do not allege what security measures Connex promised, what level of security was required, how long information would be retained, what notice timeframe was contractually agreed, or what consideration supported a separate cybersecurity promise.

The fact that Plaintiffs provided PII to obtain financial services does not, by itself, create an implied contract for specific cybersecurity measures. Courts have held that merely being "required to provide PII as a condition of doing business" "is not enough to create a contractual promise to safeguard Plaintiffs' information." *Everhart v. Colonial Pipeline Co.*, 2022 WL 3699967, at *6 (N.D. Ga. July 22, 2022). If there was a contract, it was a contract to provide financial services. Plaintiffs allege no facts suggesting that they requested, or that Connex made,

22

additional promises regarding loss prevention or particular cybersecurity obligations. *See Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371, at \*3 (W.D. Wash. Mar. 27, 2015). Plaintiffs' subjective expectation that Connex would protect information in a particular way is not enough; "such unilateral and subjective expectations do not give rise to enforceable contracts." *Id*.

Plaintiffs' reliance on privacy policies or general confidentiality expectations does not cure this defect. Courts frequently hold that privacy notices and broad policy statements do not create contractual promises. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017) (rejecting alleged breach of contract based on a privacy notice because "representations of conditions [defendant] will maintain are in the nature of contract recitals"); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004) (an "alleged violation of the privacy policy" "does not give rise to a contract claim," and "broad statements of company policy do not generally give rise to contract claims"); *In re Zappos.com, Inc.*, 2013 WL 4830497, at \*3 (D. Nev. Sept. 9, 2013) ("unilateral statements of fact as to the safety of customers' data do not create any contractual obligations"). Plaintiffs' allegation that Connex promised to protect information through privacy policies, Compl. ¶ 47, is too general to plead a definite implied contract.

Plaintiffs also fail to plead consideration for a separate data-security agreement. Courts have recognized that consideration is required for implied contract claims regarding data security. *Ortiz v. Perkins & Co*, 2022 WL 16637993, at \*6 (N.D. Cal. Nov. 2, 2022). Plaintiffs allege that they provided their PII to obtain financial services. Compl. ¶¶ 33-38. That information was necessary to open accounts and provide credit-union services; it was not a separate bargained-for exchange for a stand-alone cybersecurity contract. Without facts showing that Plaintiffs paid for or otherwise exchanged consideration for a particular security promise, the implied contract claim fails.

23

Finally, Plaintiffs do not plausibly plead breach or contract damages. As with negligence, Plaintiffs infer breach from the mere occurrence of a criminal intrusion. That does not establish breach of any definite contractual obligation. And Plaintiffs' alleged damages are speculative, generalized, or not traceable to the Incident. Because Plaintiffs do not plead formation, definite terms, consideration, breach, or cognizable damages, Count II should be dismissed.

### c.  Plaintiffs fail to state a claim for intrusion upon seclusion.

Plaintiffs' intrusion upon seclusion claim fails because the Complaint does not allege that Connex intentionally intruded into Plaintiffs' solitude, seclusion, or private affairs. Connecticut recognizes invasion of privacy as encompassing the four categories set forth in the Restatement, including "unreasonable intrusion upon the seclusion of another." *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107 (1982); *Caro v. Weintraub*, 618 F.3d 94 (2010). To establish intrusion upon seclusion, a plaintiff must prove "(1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person." *Parnoff v. Aquarion Water Company of Connecticut*, 188 Conn.App. 153 (2019); *Cornelius v. Markle Investigations, Inc.*, 220 Conn.App. 135 (2023). The tort is an intentional tort. It does not impose strict liability on an entity that suffers a criminal cyberattack, and it does not convert alleged negligent data-security practices into an intentional invasion of privacy.

The intent element is fatal here. Under Connecticut law, an actor commits an intentional intrusion only if "he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Parnoff v. Aquarion Water Company of Connecticut*, 188 Conn.App. 153 (2019). That definition may describe the alleged unauthorized criminal actor here, but it does not describe Connex. The Complaint alleges that "an unknown and

unauthorized criminal actor" accessed Connex's network and exfiltrated certain information. Compl. ¶ 2. It further alleges that Connex experienced unusual activity, immediately began an investigation using independent experts, notified law enforcement and regulators, and implemented additional security measures. Compl. ¶¶ 3, 39. Those allegations are inconsistent with the theory that Connex itself intentionally intruded into Plaintiffs' private affairs. At most, Plaintiffs allege that Connex failed to prevent a third-party intrusion. That is not enough to plead an intentional intrusion by Connex.

Plaintiffs attempt to plead around this defect by alleging that Connex's "acts and omissions giving rise to the Data Breach were intentional" because Connex allegedly chose to implement inadequate security and delayed notice. Compl. ¶ 227. But an intentional business decision is not the same thing as an intentional intrusion into another's seclusion. The relevant "intrusive act" must be the prying into, accessing of, or interference with Plaintiffs' private affairs—not the alleged failure to maintain adequate safeguards. Courts reject attempts to "morph" allegations that a defendant was negligent in safeguarding information "into an intentional act of divulging" confidential information. *Burton v. MAPCO Exp., Inc.*, 47 F. Supp. 3d 1279, 1288 (N.D. Ala. 2014). Likewise, allegations of negligent data security are "insufficient to state a claim for the intentional tort of invasion of privacy because no cause of action can exist for the negligent commission of an intentional tort." *Carlisi v. Sprintcom, Inc.*, 2006 WL 8432613, at *2 (S.D. Fla. Sept. 6, 2006). Plaintiffs' theory improperly conflates the alleged malicious acts of unknown third-party criminals with Connex's alleged failure to prevent those acts. See *Carr v. Oklahoma Student Loan Auth.*, 699 F. Supp. 3d 1241, 1252-53 (W.D. Okla. 2023).

Nor does Connecticut law support extending the tort to impose liability on a data custodian merely because a third party allegedly accessed data in its possession. No Connecticut Supreme

25

Court or Connecticut Appellate Court decision has directly applied intrusion upon seclusion to a cyber data breach. Connecticut courts have adopted the Restatement's "physical or otherwise" formulation, but that language addresses the manner in which the intruder may invade privacy; it does not eliminate the requirement that the defendant before the Court be the actor who intentionally intruded. See *Parnoff v. Aquarion Water Company of Connecticut*, 188 Conn.App. 153 (2019); *Cornelius v. Markle Investigations, Inc.*, 220 Conn.App. 135 (2023). Here, the alleged intruder was the unknown criminal actor, not Connex.

Plaintiffs also fail to allege a substantial intrusion by Connex that would be highly offensive to a reasonable person. Connecticut law requires more than technical or incidental interference. The defendant's alleged interference "must be substantial, must be of a kind that would be highly offensive to a reasonable person, and must be a result of conduct to which a reasonable person would strongly object." *Cornelius v. Markle Investigations, Inc.*, 220 Conn.App. 135 (2023). Plaintiffs do not allege that Connex pried into their accounts for an improper purpose, accessed their private affairs without permission, surveilled them, or deliberately exposed their data to the public. Rather, Plaintiffs allege that Connex collected information in connection with providing credit union services and then was victimized by an unauthorized cyberattack. Compl. ¶¶ 32-40. Those allegations do not plausibly plead the kind of intentional, substantial, and strongly objectionable intrusion by Connex required under Connecticut law.

The absence of a publication requirement does not save the claim. Plaintiffs may argue that intrusion upon seclusion "does not depend upon any publicity given to the person whose interest is invaded" and instead focuses on the intentional interference itself. *Starratt v. Spencer*, Not Reported in A.2d (2002). But that principle only means a plaintiff need not prove public dissemination where the defendant intentionally intruded into private affairs. It does not relieve

26

Plaintiffs of their burden to plead that Connex committed the intrusion. The Complaint does not allege that Connex intentionally accessed Plaintiffs' private information without permission; it alleges that an unauthorized third-party criminal did so. Compl. ¶ 2. Thus, even accepting that publication is not required, Plaintiffs still have not pleaded the necessary intentional intrusion by Connex.

Connecticut's intrusion tort is not a catchall remedy for every alleged failure to protect data from cybercriminals. Because Plaintiffs have not pleaded facts showing that Connex intentionally intruded upon their solitude, seclusion, or private affairs in a manner highly offensive to a reasonable person, Count III should be dismissed.

### d. Plaintiffs fail to state a claim for unjust enrichment.

Plaintiffs' unjust enrichment claim fails because they do not plausibly allege that Connex unjustly retained a benefit at Plaintiffs' expense. Under Connecticut law, a plaintiff asserting unjust enrichment must prove "(1) that the defendant benefitted, (2) that the defendant[] unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Jones*, 2024 WL 1307148, at *9; *see also Gagne v. Vaccaro*, 255 Conn. 390, 409 (Conn. 2001). The doctrine prevents a party from retaining a benefit where it would be unjust to do so. *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (Conn. 2006).

Plaintiffs allege that they conferred a monetary benefit on Connex by providing their PII, that Connex saved money by allegedly underinvesting in data security, and that Connex should disgorge proceeds into a common fund or constructive trust. Compl. ¶¶ 237-246. These allegations are conclusory. Plaintiffs do not allege that Connex failed to provide financial services, denied them account benefits, charged them unauthorized fees, or retained a specific payment that should have been returned. Nor do they allege that any identifiable portion of any payment was earmarked

27

for data security and then wrongfully diverted. Their theory improperly treats data security as an unbundled component of financial services without pleading facts showing that Plaintiffs paid a distinct amount for it.

Courts reject similar attempts to recast necessary business information as an unjustly retained benefit. "The PII is better understood as necessary to conduct business operations, not a good whose inherent value was extracted by Defendants." *Johnson v. Nice Pak Products, Inc.*, 2024 WL 2845928, (S.D. Ind., 2024). Here, Plaintiffs provided PII so Connex could open and maintain accounts and provide credit-union services. Compl. ¶¶ 33-38. That does not mean Connex was enriched in a way that equity requires it to disgorge.

The claim is also duplicative of Plaintiffs' implied contract and negligence theories. Connecticut courts generally do not permit unjust enrichment where a valid contract governs the parties' relationship. *Vertex, Inc.*, 278 Conn. at 571. Plaintiffs plead unjust enrichment in the alternative to implied contract, Compl. ¶ 236, but both claims are based on the same alleged obligation to safeguard PII and the same alleged failure to do so. If Plaintiffs' account relationship is governed by express or implied agreements, unjust enrichment is unavailable. If there is no such agreement, Plaintiffs still fail to allege that Connex unjustly retained a benefit at their expense.

Finally, the unjust enrichment claim fails for lack of damages and causation. Plaintiffs' alleged impoverishment is the same speculative future risk, lost time, diminution in value, increased spam, and vague suspicious activity that cannot establish standing or negligence damages. Because Plaintiffs do not plausibly allege enrichment, impoverishment, a connection between the two, or circumstances making Connex's retention of any benefit unjust, Count IV should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Connex Credit Union, Inc. respectfully requests that the Court dismiss Plaintiffs' Consolidated Class Action Complaint in its entirety under Rules 12(b)(1) and 12(b)(6), and grant such other and further relief as the Court deems just and proper.

Dated: May 4, 2026                          Respectfully submitted,


                                            **DEFENDANT,**
                                            **CONNEX CREDIT UNION, INC.,**


                                            By: */s/ Steven J. Zakrzewski*
                                                 Steven J. Zakrzewski
                                                 Jane H. Torcia
                                                 Gordon & Rees Scully Mansukhani, LLP
                                                 One Financial Plaza
                                                 755 Main Street, Suite 1700
                                                 Hartford, Connecticut 06103
                                                 Phone: 860-278-7448
                                                 Fax: 860-560-0185
                                                 Email: szakrzewski@grsm.com
                                                 Email: jtorcia@grsm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

*/s/ Steven J. Zakrzewski*
Steven J. Zakrzewski